FILED

2011 APR 28 P 3: 38

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHMAN DISTRICT CALIF.

E-filing

1  SEAN REIS (sreis@edelson.com) - SBN 184044
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (949) 459-2124
   Fax: (949) 459-2123
4
5  JAY EDELSON* (jedelson@edelson.com)
   MICHAEL J. ASCHENBRENER* (maschenbrener@edelson.com)
6  BRADLEY M. BAGLIEN* (bbaglien@edelson.com)
   CHRISTOPHER L. DORE* (cdore@edelson.com)
7  EDELSON MCGUIRE, LLC
   350 North LaSalle Street, Suite 1300
8  Chicago, Illinois 60654
   Telephone: (312) 589-6370
9  Fax: (312) 589-6378
10
   * Pro Hac Vice Application Forthcoming

11

## UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  JAMES EFIRD, individually and on behalf of all others similarly situated, | CV 11 Case No. 2115 |
| 15  | |
| Plaintiff, | **CLASS ACTION** |
| 16  | |
| 17  v. | **COMPLAINT FOR:** |
| 18  SONY COMPUTER ENTERTAINMENT AMERICA, LLC, a Delaware limited liability | (1) Violations of Cal. Bus. & Prof. Code § 17200 |
| 19  company, SONY COMPUTER ENTERTAINMENT AMERICA, INC., a | (2) Violations of Cal. Civ. Code § 1750 (3) Violations of Cal. Civ. Code §1798.80 |
| 20  Delaware corporation, SONY CORPORATION OF AMERICA, a New York corporation, and | (4) Breach of Contract (5) Breach of Implied Contract |
| 21  DOES 1 through 10, inclusive, | (6) Negligence (7) Negligence Per Se |
| 22  Defendants. | |
| 23  | **DEMAND FOR JURY TRIAL** |

24

25

26

27

28

COMPLAINT

1    Plaintiff, by and through his attorneys, upon personal knowledge as to himself and his

2  own acts, and upon information and belief as to all other matters, complains and alleges as

3  follows:

4                                **NATURE OF THE ACTION**

5    1.    Plaintiff James Efird brings this Class Action Complaint against Defendants Sony

6  Computer Entertainment of America, LLC, Sony Computer Entertainment of America, Inc. and

7  Sony Corporation of America (collectively "Sony" or "Defendant") for failing to adequately

8  safeguard its customers' sensitive personally identifiable information ("PII") and financial data,

9  including but not limited to consumer credit card numbers, names, email addresses, login

10  credentials, password security questions and answers, birthdates, and purchase history.

11    2.    As a result of Sony's grossly inadequate security, one or more computer hackers

12  gained access to the sensitive PII and potentially credit card information of approximately 77

13  million users of the Sony PlayStation Network ("PSN"). Further harming its customers, Sony

14  chose to wait nearly a week after it learned of the security breach before it publicly announced

15  that its users' personal information had been compromised.

16    3.    During the interim period, Sony inexplicably shut down the PSN for all registered

17  users, including those who paid for premium or additional games and services on the PSN,

18  depriving these users of products and services that they had purchased and could only access

19  through the PSN.

20    4.    Moreover, Sony unreasonably delayed in informing PSN users of the security

21  breach for nearly a week, preventing consumers from taking prompt and reasonable steps to

22  attempt to secure their personal and financial data.

23    5.    To date, Sony has done nothing to remedy the security breach or assist consumers

24  who have suffered harm, and who continue to face a real and immediate threat of further severe

25  economic harm.

26

27

28
COMPLAINT

2

1

**PARTIES**

2

6.    Plaintiff James Efird is a natural person and a citizen of the state of Washington.

3    7.    Defendant Sony Computer Entertainment America, LLC ("Sony Computer") is a

4    Delaware limited liability company with its executive offices and principal place of business and

5    corporate headquarters in Foster City, San Mateo County, California.  Sony Computer does

6    business throughout the State of California and the United States.

7    8.    Defendant Sony Computer Entertainment America, Inc. ("SCEA") is a Delaware

8    corporation with its principal place of business and corporate headquarters located in Foster City,

9    San Mateo County, California.  SCEA does business throughout the State of California and the

10    United States.

11    9.    Defendant Sony Corporation of America, Inc. ("Sony USA") is a New York

12    Corporation with its principal place of business and corporate headquarters in New York, NY.

13    Sony USA does business throughout the State of California and the United States.

14

**JURISDICTION AND VENUE**

15    10.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the

16    Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) & (d) because at least one member of

17    the proposed class has a different citizenship from a defendant, the total amount in controversy

18    exceeds \$5,000,000, and none of the statutory exceptions apply.

19    11.    Venue is proper in this District because Defendant is located within the District

20    and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

21

**INTRADISTRICT ASSIGNMENT**

22    12.    Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San

23    Francisco Division or Oakland Division.

24

25

26

27

28

COMPLAINT

3

1

2

## FACTUAL BACKGROUND

### The PlayStation Network

3    13.    Launched in or about 2007, the PSN is an online multiplayer gaming and digital

4    media delivery service run by Sony for use with the PlayStation 3 and the PlayStation Portable

5    video game consoles. There are over 77 million registered PSN accounts worldwide.[1]

6    14.    The PSN allows members to play video games online, as well as purchase content

7    and other services through the PlayStation Store, including new games, additional content for

8    existing games, and movies and television shows on demand.

9    15.    In addition, PSN users may access content provided by other subscription

10   services, including Netflix, Hulu TV Plus, and MLB.tv. Subscribers to these services pay

11   applicable monthly fees to the appropriate service provider but access the video services directly

12   through the PSN.

13   16.    Users may register for the PSN directly through their PlayStation 3 console, their

14   PlayStation Portable gaming device, or through a personal computer. Sony requires all

15   registered users to provide their actual names, addresses, email addresses, birthdates, and to

16   create a unique user ID and password in order to sign up for a PSN account.

17   17.    While it is free to register for a standard PSN account, Sony encourages PSN

18   subscribers to upgrade to a "PlayStation Plus" account for an additional fee. According to Sony,

19   a PlayStation Plus membership entitles users to additional content, exclusive offers, and

20   discounted purchases through the PlayStation Store, among other things. Sony currently charges

21   $49.99 for full year's membership to PlayStation Plus, or $17.99 for a three-month membership.

22   18.    Any PSN user may purchase content from the PlayStation Store via credit card.

23   To do so, Sony requires that a user input a valid credit card number prior to the user's first

24

25

26   [1] Qriocity is a trade name for Sony's streaming music, games, e-book, and video on-demand
     services. Qriocity services are available exclusively through the PlayStation Network. The
27   PlayStation Network and Qricity are referred to collectively herein as the "PSN."

28

COMPLAINT

4

1  purchase. Sony then stores the credit card number associated with the user's account on the PSN

2  network for future purchases.

3      19.     PSN users may also purchase content with electronic credits, which can be placed

4  into a user's "virtual wallet" by providing a 12 character alphanumeric code from a PlayStation

5  Network Card.[2] Electronic credits are only redeemable on the PSN and may only be spent when

6  a user is connected to the PSN service.

7                          **The Breach of Sony's Database**

8      20.     Between April 17 and April 19, 2011, an unidentified third party gained access to

9  the PSN and the sensitive PII and financial information of approximately 77 million registered

10  PSN users.

11     21.     On April 20, 2011, Sony publicly acknowledged that the PSN had suffered an

12  "external intrusion," though Sony did not notify consumers that their PII was exposed as a result

13  of the security breach. In response, Sony shut down all PSN services, preventing any PSN

14  registered user from accessing his or her account or any of the online content associated with the

15  account (the "Service Outage").

16     22.     Also on April 20, 2011, Sony stated on the official PlayStation blog that Sony was

17  "aware certain functions of the PlayStation network" were down. Upon attempting to sign on to

18  the PSN via the PS3, users would receive a message indicating that the PSN was "undergoing

19  maintenance."

20     23.     As a result of Sony's shutdown of the PSN, all PSN users were unable to access

21  the PSN to play online games, purchase online content, or access their PSN accounts.

22  PlayStation Plus subscribers were unable to access the exclusive content that such users were

23  entitled to in exchange for their subscription fees.

24

25

26  ────────────────────

[2] PlayStation Network Cards, which function much like a traditional gift card, are available at a

27  variety of retailers.

28

1     24.     Similarly, subscribers of video subscription services such as Netflix, Hulu TV

2 Plus, and MLB.tv were unable to access these services through the PSN.

3     25.     While Sony learned of the security breach on or before April 20, 2011, it did not

4 immediately inform PSN users that their PII had been disclosed or that their credit card and other

5 financial information was at risk as a result of the breach. Accordingly, while some users were

6 aware that they could not access the PSN, they were not informed that an unauthorized third

7 party had access to their personal and financial information.

8     26.     Finally, on April 26, 2011, Sony revealed on the official PlayStation blog that

9 users' "name, address (city, state, zip), country, email address, birthdate, PlayStation

10 Network/Qriocity password and login, and handle/PSN online ID" had been obtained in the

11 attack.

12     27.     In a subsequent update on the PlayStation blog dated April 27, 2011, Sony

13 admitted that the PII stored on the PSN was not encrypted, making it vulnerable and accessible

14 to hackers who gained access to the PSN.

15     28.     In the April 26, 2011 announcement, Sony further stated that "we are advising

16 you that your credit card number (excluding security code) and expiration date may have been

17 obtained."

18     29.     To date, the PSN remains offline, and Sony has not identified when the PSN will

19 again be accessible.

20                         **Sony's Security Representations and Policies**

21     30.     Sony asserts through its website that it will safeguard its users' PII. Sony's

22 Privacy Policy specifically states:

23         **Accuracy & Security** We take reasonable measures to protect the
confidentiality, security, and integrity of the personal information collected from

24         our website visitors. Personal information is stored in secure operating

25         environments that are not available to the public and that are only accessible to
authorized employees. We also have security measures in place to protect the

26         loss, misuse, and alteration of the information under our control.

27

28

COMPLAINT

1    31.    Sony's representations vastly misrepresent the quality and reliability of the PSN

2    service and its ability to keep data secure. Among other things, Sony has admitted that it failed

3    to encrypt its users' PII, allowing a hacker to easily access users' data once inside the PSN.

4    32.    In addition, Sony failed to properly implement an intrusion detection and

5    prevention system ("IDPS"), an industry standard safeguard employed by companies like Sony

6    that store sensitive User PII.[3] Had Sony properly implemented an IDPS, Sony would have

7    known within a reasonable period of time what information was accessed, and thus would have

8    been able to inform affected consumers of the security breach.

9    33.    Had Sony properly secured its database through known and available encryption

10    methods, even if a hacker were able to enter the network, he would be limited in his ability to

11    inflict harm. For example, a hacker still might be able to cause temporary internal problems in

12    the operation of the site, but under the appropriate and necessary security, a hacker would not be

13    able to steal 77 million sets of user PII as the data would be encrypted and indecipherable.

14    34.    Indeed, Sony's failure to adequately secure its network and user PII is especially

15    egregious because a notorious organization of hackers known as "Anonymous" specifically

16    identified Sony as a target for a security breach on or about April 4, 2011, over two weeks before

17    the PSN security breach and Service Outage occurred.

18    35.    Anonymous is well known for its ability to target and successfully breach

19    networks of high-profile companies such as Sony, which should have put Sony on notice that an

20    attack on its networks was imminent.

21    36.    After the security breach occurred, Sony further proliferated the harm to PSN

22    users by waiting several days to inform PSN users of the security breach. As a result, Sony

23    prevented consumers from taking reasonable steps to safeguard or protect their PII in a timely

24    fashion.

25

26    [3] *See* National Institute of Standards and Technology, "Guide to Intrusion Detection and
    Prevention Systems (IDPS)," available at http://csrc.nist.gov/publications/nistpubs/800-
27    94/SP800-94.pdf (last accessed April 28, 2011).

28
COMPLAINT

7

1    37.    Since the security breach has occurred, Sony has failed to take substantial

2    corrective action. As of April 28, 2011, the PSN remains offline, and Sony has failed to identify

3    the source of the breach.

4    **Nature of the Harms Suffered by PSN Users**

5    **Loss of PSN Users' Sensitive PII**

6    38.    In order to register for a PSN account, Sony requires users to provide a wealth of

7    sensitive PII, including their real names, addresses, and date of birth, and also requires users to

8    create a unique username and password for their account. Sony also requires users to answer

9    password-reset questions, which may be used to reset the user's account password.

10    39.    PSN users' PII has substantial value to Sony and its advertising and business

11    partners. As it admits in its Privacy Policy, Sony exploits this value by sharing and selling its

12    users' PII with numerous third parties:

13
>       We may share the personally identifying information of our website users
14    >   with our affiliates in the Sony group family of companies and other third
>       parties who assist us with fulfilling your requests, clear and verify
15    >   transactions, deliver and administer products, content or services, manage
>       and enhance customer data, store and maintain our database records,
16    >   provide customer service, detect fraud or illegal activities, conduct
>       customer research and surveys, develop new products and services and
17    >   sell products and services to you.

18    40.    There are active markets through which people and entities buy and sell this type

19    of PII. As revealed in its own Privacy Policy, Sony itself participates in this market and garners

20    substantial profits by selling data from its vast database of PII of approximately 77 million users.

21    41.    Much like Sony, consumers have access to the markets for PII and are able

22    control and sell their PII to interested third parties. Indeed, a start-up company named Allow,

23    Ltd. – one of many new companies designed to allow consumers to profit from or protect their

24    PII – offers to sell consumers' personal information on their behalf, providing 70% of the money

25    from each sale of PII directly to the consumer. One individual recently received $8.95 for

26

27

28

COMPLAINT

8

1 merely permitting Allow to inform a credit card company that the individual was interested in
2 obtaining a new credit card.[4]

3    42.    Because of the monetary value of access to a large database of users' personal
4 information, even those PSN users who sign up for "free" PSN accounts give something of
5 substantial value to Sony – their sensitive PII. In other words, all PSN users exchange something
6 valuable – access to their personal information – for the PSN service and Sony's promise to use
7 reasonable methods to protect the data that users provide.

8    43.    As a result of Sony's failure to properly safeguard its users' PII, including the
9 failure to encrypt all PII stored on the PSN, Sony has caused PSN users harm in the form of the
10 loss or diminution in value of their PII.

11 **Loss of Access to the PSN for PlayStation Plus Members**

12    44.    As alleged herein, Sony encourages users to register for its paid PlayStation Plus
13 subscription service. In exchange for their payment, PlayStation Plus users are promised
14 exclusive content, services and deals on the PSN.

15    45.    As a result of Sony's failure to adequately safeguard users' PII, including its
16 failure to encrypt PII and consequent exposure of massive amounts of personal data, Sony chose
17 to shut down the PSN after the security breach occurred.

18    46.    Accordingly, all PlayStation Plus users were unable to access the PSN and were
19 deprived of the bargained-for exclusive services that they were promised in exchange for their
20 subscription payments.

21    47.    The harm to PlayStation Plus users is ongoing, as the PSN remains offline and
22 Sony has failed to take reasonable measures to restore users' access to the PSN.

23

24

25

26 [4] *See* "Web's Hot New Commodity: Privacy," available at
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last
27 accessed April 28, 2011).

28

COMPLAINT

9

**Loss of Access to Third-Party Services on the PSN**

48.     As alleged herein, numerous PSN users rely exclusively on their PlayStation 3 consoles and the PSN to use streaming video services such as Netflix, Hulu TV Plus, and MLB.tv. While these users pay subscription fees to appropriate third parties, Sony advertises that such services are available on the PSN and encourages users to use these services through their PlayStation 3 and PSN.

49.     As a result of Sony's failure to adequately safeguard users' PII, including its failure to encrypt PII and consequent exposure of massive amounts of personal data, Sony chose to shut down the PSN because the security breach occurred.

50.     Accordingly, all subscribers to streaming video services, including Netflix, Hulu TV Plus, and MLB.tv were deprived of their ability to use these services through the PSN.

51.     Consistent with Sony's aggressive advertising about the availability of streaming video services on the PSN, many subscribers relied exclusively on their PlayStation 3 consoles and the PSN to access such services.

52.     Accordingly, as a result of Sony's actions subscribers to video streaming services available on the PSN have been deprived of the bargained for benefits of such services, causing such users economic harm.

53.     The harm to these users is ongoing, as the PSN remains offline and Sony has failed to take reasonable measures to restore users' access to the PSN.

**Diminution of Value of the PlayStation 3 Console**

54.     In order to make the PlayStation 3 more attractive to consumers, Sony aggressively advertises the features of the PSN, including the PlayStation Store, PlayStation Plus membership, and the availability of movie and television downloads. As a result, consumers purchase PlayStation 3 consoles with the expectation that they will have reasonable access to the PSN, which Sony claims is a valuable benefit of the gaming console.

COMPLAINT

1      55.     Consistent with Sony's aggressive advertising, access to the PSN was part of the

2 bargained-for exchange that consumers agreed to when purchasing a PlayStation 3 console. As a

3 result of Sony's suspension of the PSN service, Sony has diminished the value of PSN users'

4 PlayStation 3 gaming systems.

5                          **Facts Relating to Plaintiff**

6      56.     Plaintiff James Efird purchased a PlayStation 3 gaming console in 2009 and has

7 been a registered user of the PSN for approximately two years.

8      57.     For approximately one year, Plaintiff has been a registered user of Defendant's

9 PlayStation Plus service. Plaintiff's PlayStation Plus subscription was active at the time of the

10 Service Outage.

11      58.     Plaintiff has purchased multiple online games through the PlayStation Store for

12 use on the PSN service, the majority of which are available exclusively while connected to the

13 PSN. As a result of the Service Outage, Plaintiff has been unable to access these online games.

14      59.     As required by Defendant, Plaintiff provided his personal credit card number for

15 purchases at the PlayStation Store. Accordingly, Plaintiff's credit card data was stored on the

16 PSN and was exposed as a result of the security breach.

17      60.     Plaintiff is a paid subscriber to Netflix's instant streaming service and relies

18 exclusively on his PS3 and the PSN to access and use the Netflix service. As a result of the

19 Service Outage, Plaintiff has been unable to watch programs through Netflix.

20                          **Class Allegations**

21      61.     Plaintiff James Efird brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3)

22 on behalf of himself and a Class of similarly situated individuals, defined as follows:

23                  All individuals and entities in the United States and its territories who
                 were active subscribers to the PlayStation Network or Qriocity service as

24                  of April 17, 2011.

25 Excluded from the Class are 1) Defendant, Defendant's agents, subsidiaries, parents,

26 successors, predecessors, and any entity in which the Defendant or their parents have a

27

28

COMPLAINT

11

1   controlling interest and their current and former employees, officers, and directors, 2) the

2   Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate

3   Judge's immediate family, 3) persons who execute and file a timely request for exclusion,

4   and 4) the legal representatives, successors, or assigns of any such excluded person.

5       62.    Plaintiff also seeks to represent a Subclass (the "PlayStation Plus Subclass") that

6   is defined as follows:

7           All Class members who, at the time of the Service Outage, was an active
        subscriber to Defendant's PlayStation Plus program.

8

9       63.    Plaintiff also seeks to represent a Subclass (the "Netflix Subclass," together with

10  the PlayStation Plus Subclass, the "Subclasses") that is defined as follows:

11          All Class members who, at the time of the Service Outage, was an active
        subscriber to the Netflix "Watch Instantly" video streaming service.

12

13      64.    The Class and the Subclasses consist of millions of individuals, making individual

14  joinder impracticable.

15      65.    There are many questions of law and fact common to the claims of Plaintiff and

16  the other members of the Class and Subclasses, and those questions predominate over any

17  questions that may affect individual members of the Class. Common questions include but are

18  not limited to the following:

19          (a)    whether Sony failed to use reasonable care in safeguarding and securing

20              its users' sensitive PII;

21          (b)    whether Sony misrepresented its capabilities to protect data on the PSN;

22          (c)    whether Sony had properly implemented an intrusion detection and

23              prevention system to protect customer data from attack;

24          (d)    whether Sony took reasonable measures to determine the extent of the

25              security breach after it first learned of the external invasion;

26

27

28

COMPLAINT

12

| 1 | (e) | whether Defendant's delay in informing PSN users of the security breach |
| 2 | | and exposure of PII was unreasonable; |
| 3 | (f) | whether Sony's conduct violated the Unfair Competition Law, Cal. Bus. & |
| 4 | | Prof. Code § 17200; |
| 5 | (g) | whether Sony's conduct violated the Consumers Legal Remedies Act, Cal. |
| 6 | | Bus. & Prof. Code § 17200; |
| 7 | (h) | whether Sony's conduct violated Cal. Bus. & Prof. Code § 1798.80; |
| 8 | (i) | whether Sony breached its own Privacy Policy; |
| 9 | (j) | whether Sony's conduct constituted negligence or negligence per se; and |
| 10 | (k) | whether Plaintiff and members of the Class are entitled to damages, |
| 11 | | injunctive relief, or other equitable relief. |

66. Plaintiff's claims are typical of the claims of all of the other members of the Class, the PlayStation Plus Subclass, and the Netflix Subclass.

67. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

68. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

69. Sony has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

70. The factual and legal bases of Sony's liability to Plaintiff and to the other members of the Class are the same and resulted in injury to Plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm as a result of Sony's wrongful conduct

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff, the Class, and the Subclasses)**

71. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

73. The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

74. As described herein, Defendant's knowing and willful failure to safeguard and secure its users' sensitive PII violates the UCL.

75. Cal. Civ. Code § 1798.81.5 requires businesses to implement and maintain reasonable security procedures and practices to protect any consumer personal information in their possession in order to protect such information from unauthorized access, use or disclosure. By failing to adequately protect users' PII, Sony unlawfully breached its duty to PSN users and violated § 1798.81.5.

76. California Civil Code § 1798.82 requires any business that owns or licenses computerized data that includes personal information to "disclose any breach of the security of

COMPLAINT

14

1 the system following discovery or notification of the breach . . . whose unencrypted personal
2 information was, or is reasonably believed to have been, acquired by an unauthorized person . . .
3 in the most expedient time possible and without unreasonable delay." By failing to encrypt PSN
4 users' PII, and waiting several days to disclose to users that their PII had been exposed, Sony
5 willfully violated § 1798.82.

6     77.     Commonly accepted and widely practiced industry standards provide that
7 sensitive PII stored in a commercial database, especially user passwords and credit card
8 information, should be encrypted to provide a barrier to removal or manipulation.

9     78.     Sony deceived consumers by providing in its Privacy Policy that it uses
10 "reasonable measures to protect the confidentiality, security, and integrity of the personal
11 information collected from our website visitors" and that it has "security measures in place to
12 protect the loss, misuse, and alteration of the information under our control."

13     79.     By failing to establish adequate safeguards to protect users' PII and failing to
14 maintain its users' personal data in an encrypted database, Sony failed to maintain reasonable
15 security measures to protect the loss and misuse of its users' PII.

16     80.     Plaintiff and the Class members relied on Sony's misrepresentations that it would
17 employ reasonable security measures to safeguard their personal data.

18     81.     By failing to employ reasonable methods to protect the security of users' PII,
19 Sony violated its own Privacy Policy.

20     82.     Defendant has violated the "unlawful" prong of the UCL because its conduct as
21 alleged herein violated California Civil Code §§ 1798.81.5 and 1798.82, the Consumer Legal
22 Remedies Act, Cal Civ. Code § 1750 *et seq.*, and the common law.

23     83.     Defendant has violated the "fraudulent" prong of the UCL by misrepresenting to
24 its users that it had "security measures in place to protect the loss, misuse, and alteration of the
25 information under its control."

26

27

28

COMPLAINT

15

1     84.     Defendant violated the "unfair" prong of the UCL because it induced users to

2  submit their PII with the written assurance that the data would be protected with reasonable

3  security measures.  Defendant knowingly failed to provide such reasonable security measures.

4     85.     As a result of Sony's conduct as alleged herein, Plaintiff and Class members have

5  suffered economic injury, including but not limited to: (1) the loss of value of their valuable PII;

6  (2) the loss of access to the PSN for PlayStation Plus members; (3) the loss of access to

7  streaming video services on the PSN; and (3) a diminution of value of their PlayStation 3

8  consoles.

9     86.     Pursuant to Cal. Bus. & Prof. Code §§ 17203 and/or 17204, Plaintiff seeks an

10  order permanently enjoining Defendant from continuing to engage in the unfair and unlawful

11  conduct described herein.  Plaintiff seeks an order requiring Defendant to (1) immediately stop

12  the unlawful practices stated in this Complaint; (2) ensure that Sony employs reasonable

13  methods to safeguard its user data; and (4) pay attorneys' fees, and costs pursuant to Cal. Code

14  Civ. Proc. § 1021.5.

15                      **SECOND CAUSE OF ACTION**
    **Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***
16              **(On Behalf of Plaintiff, the Class and Subclasses)**

17     87.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

18     88.     The Consumers Legal Remedies Act prohibits the act, use or employment by any

19  person of any deception, fraud, false pretense, false promise, misrepresentation, concealment,

20  suppression or omission of any material fact with intent that others rely upon such act in

21  connection with the sale or advertisement of any merchandise whether or not any person has in

22  fact been misled, deceived or damaged thereby.

23     89.     As described within, Defendant has engaged in deceptive practices, unlawful

24  methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750, *et seq.*, to the

25  detriment of Plaintiff and the Class.

26

27

28
    COMPLAINT
                                  16

1      90.     Defendant, acting with knowledge, intentionally and unlawfully brought harm

2 upon Plaintiff and the Class by deceptively inducing Plaintiff and the Class to purchase

3 PlayStation 3 and PlayStation Portable gaming devices based on the deceptive and misleading

4 representations that users would have access to the full array services provided by the PSN.

5 Defendant further induced Plaintiff and the Class to register for the PSN and provide credit card

6 information for the purchase of content from the PlayStation Store based upon deceptive and

7 misleading representations that it had adequate security measures in place to protect the loss or

8 misuse of sensitive data provided to Defendant.

9      91.     Specifically, Defendant's actions in selling defective products and failing to

10 remedy these defects have violated the following provisions of the CLRA:

11           a) Civil Code § 1770(a)(5): Representing that goods or services have

12              characteristics, uses, or benefits which they do not have;

13           b) Civil Code § 1770(a)(7): Representing that goods or services are of a

14              particular standard, quality or grade, if they are of another;

15           c) Civil Cod § 1770(a)(9): Advertising goods or services with intent not to sell

16              them as advertised; and

17           d) Civil Code §1770(a)(14): Representing that a transaction confers or involves

18              rights, remedies or obligations which it does not have or involve.

19      92.     Plaintiff and the Class members purchased PlayStation 3 and/or PlayStation

20 Portable devices to be used on the PSN, thereby making them consumers under the CLRA.

21      93.     The PlayStation 3 console, the PlayStation Portable Console, and the PSN

22 constitute "goods" and/or "services" within the meaning of the CLRA.

23      94.     Members of the PlayStation Plus Subclass paid Defendant an additional fee to

24 Defendant for access to additional content and services on the PSN, thereby making them

25 consumers under the CLRA.

26

27

28

COMPLAINT

17

1    95.    Members of the Netflix Subclass paid a fee for access to streaming videos on the

2    PSN, thereby making them consumers under the CLRA.

3    96.    Plaintiff and the Class members relied on Sony's promise that it had adequate

4    security measures in place to protect the loss or misuse of sensitive data provided to Defendant,

5    and that the PSN would be available to registered purchasers of PlayStation 3 or PlayStation

6    Portable gaming consoles.

7    97.    Plaintiff and the Class have suffered harm as a direct and proximate result of

8    Defendant's violations of law and wrongful conduct. In particular, as a result of Defendant's

9    actions the PSN database was accessed without authorization, Plaintiff and the Class's sensitive

10   PII was compromised, and the PSN suffered a Service Outage that prevented paid subscribers

11   from accessing services.

12   98.    Pursuant to Civ. Code § 1780(a), Plaintiff seeks injunctive relief requiring

13   Defendant to cease and desist the illegal conduct described herein, and any other appropriate

14   remedy for violations of the CLRA. For the sake of clarity, Plaintiff expressly disclaims any

15   claim for damages under the CLRA at this time.

16                          **THIRD CAUSE OF ACTION**
                  **Violations of Security Requirements for Customer Records,**
17                         **Cal. Civ. Code § 1798.80, *et seq.***
                  **(On Behalf of Plaintiff, the Class and Subclasses)**
18

19   99.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

20   100.   Cal. Civ. Code § 1798.82 requires any business that owns or licenses

21   computerized data that includes personal information to "disclose any breach of the security of

22   the system following discovery or notification of the breach . . . whose unencrypted personal

23   information was, or is reasonably believed to have been, acquired by an unauthorized person . . .

24   in the most expedient time possible and without unreasonable delay."

25   101.   As alleged herein, Defendant failed to disclose to Plaintiff and the Class, in the

26   most expedient time possible and without unreasonable delay, the breach of security that exposed

27

28
     COMPLAINT
                                        18

1 | users' names, credit card numbers, and other sensitive PII for several days after it learned that
2 | such information had been compromised by an external breach.

3 |     102.    In particular, Defendant learned of the external intrusion on or before April 19,
4 | 2011, but failed to publicly disclose that consumer data, including names and credit card
5 | numbers, were exposed until April 26, 2011.

6 |     103.    Moreover, Defendant failed to publicly disclose that user PII was not encrypted,
7 | and thus more vulnerable to exploitation once the PSN's security was breached, until April 27,
8 | 2011.

9 |     104.    Moreover, by posting notice of the security breach on the official PlayStation
10 | blog, Defendant did not take reasonable steps to ensure that all PSN users were informed of the
11 | security breach. In particular, on information and belief, Defendant has failed to directly contact
12 | PSN users through email or other reasonable means of communication. As a result, many Class
13 | members may still be unaware that their data has been compromised.

14 |     105.    As a direct and proximate result of Defendant's acts and omissions described
15 | herein, Plaintiff and the Class have suffered damages including, but not limited to, loss of an
16 | invasion of privacy, loss of property, loss of money, loss of control of their personal financial
17 | and other nonpublic information, stress and anxiety of future economic harm and identity theft,
18 | and the burden of monitoring their financial and credit accounts, in an amount to be proven at
19 | trial.

20 |

21 | <div align="center">**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff, the Class and Subclasses)**</div>

22 |     106.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

23 |     107.    In its Privacy Policy (the "Agreement"), Defendant agreed to, among other things,
24 | properly maintain members' data. In exchange, Plaintiff and Class Members agreed to purchase
25 | PlayStation 3 consoles, register for the PSN, and provide sensitive PII as required by Defendant.

26 |
27 |
28 |

1    108.    The Agreement's provisions constitute a valid and enforceable contract between

2    Plaintiff and the Class on the one hand, and Defendant on the other.

3    109.    Under the Agreement, in order to use the PSN, Plaintiff and the Class transmitted

4    several pieces of Sensitive PII to Defendant, including by not limited to their names, addresses,

5    and email addresses, and were required to create a unique user ID and password. In turn, under

6    the Agreement Defendant promised that it would maintain security measures to "protect the loss,

7    misuse, and alteration of the information under our control."

8    110.    By storing user PII in an unencrypted form and failing to provide adequate

9    security to protect the PSN, Defendant breached its contracts because Defendant did not properly

10   maintain Plaintiff's and Class members' sensitive PII.

11   111.    Class members suffered and will continue to suffer damages including, but not

12   limited to, loss of their electronic information and an interruption of service through the PSN.

13

14
### FIFTH CAUSE OF ACTION
#### Breach of Implied Contracts
#### (On Behalf of Plaintiff, the Class, and the Subclasses)

15   112.    Plaintiff incorporates the foregoing allegations, excluding paragraphs 106 through

16   111, as if fully set forth herein.

17   113.    Plaintiff hereby pleads in the alternative to his Fourth Cause of Action.

18   114.    In order to use the PSN, Plaintiff and the Class transmitted several pieces of

19   sensitive PII to Defendant, including their names, addresses, email addresses, user IDs, and

20   passwords.

21   115.    In addition, in order to purchase content at the PlayStation Store, Plaintiff and

22   Class members provided valid credit card numbers, which Defendant stored on PSN servers in

23   connection with the users' account.

24   116.    By providing sensitive PII and credit card data, and upon Defendant's acceptance

25   of such information, Plaintiff and the Class, on the one hand, and Defendant, on the other hand,

26   entered into implied contracts whereby Defendant was obligated to take reasonable steps to

27

28

COMPLAINT

20

1 | secure and safeguard that information and ensure that PSN services, including those services
2 | purchased by Plaintiff an the Class, were available.

3 |     117.   Under the implied contract, Defendant was further obligated to provide Plaintiff
4 | and the Class prompt and sufficient notice of any and all unauthorized access and/or theft of their
5 | sensitive PII.

6 |     118.   Without such implied contracts, Plaintiff and the Class would not have provided
7 | their personal or financial information to Defendant.

8 |     119.   By failing to properly secure Plaintiff and the Class's PII and financial
9 | information, and further by failing to notify Plaintiff and the Class that their personal information
10 | had been compromised, Defendant breached its implied contracts with Plaintiff and the Class.

11 |     120.   Plaintiff and Class members suffered and will continue to suffer damages
12 | including, but not limited to, loss of their sensitive PII, loss of private financial information, and
13 | an interruption in PSN service.

14 |

<div align="center">

**SIXTH CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff, the Class, and the Subclasses)**

</div>

16 |     121.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

17 |     122.   In order to sign up for a PSN account, Plaintiff and the Class transmitted several
18 | pieces of sensitive PII to Defendant, including their names, addresses, and e-mail addresses, and
19 | were required to create unique user ID's and passwords.

20 |     123.   In order to purchase content from the PlayStation Store via credit card, Defendant
21 | required that PSN users input and store a valid credit card number that is stored on the PSN for
22 | subsequent use.

23 |     124.   By agreeing to accept Plaintiff and the Class's sensitive PII and consumer credit
24 | card data, Defendant assumed a duty, which required it to exercise reasonable care to secure and
25 | safeguard that information and utilize reasonable methods to do so.

26 |
27 |
28 |

COMPLAINT

<div align="center">21</div>

1      125.    On information and belief, Defendant failed to adequately protect its databases

2  from third-party attacks, failed to properly implement an intrusion detection and prevent system,

3  failed to encrypt plaintiff and the Class member's passwords, and failed to provide Plaintiff and

4  the Class with prompt and sufficient notice that their sensitive PII had been compromised,

5  thereby breaching its duties to Plaintiff and the Class.

6      126.    By failing to take proper security measures to protect Plaintiff and the Class's

7  sensitive PII and maintain the integrity of the PSN as described herein, Defendant's conduct was

8  grossly negligent and departed from all reasonable standards of care.

9      127.    As a direct and proximate cause of Defendant's conduct, the PSN database was

10  accessed without authorization, Plaintiff and the Class's sensitive PII was compromised, and the

11  PSN suffered a Service Outage that prevented paid subscribers from accessing services.

12      128.    As a direct and proximate result of Defendant's misconduct described herein,

13  Plaintiff and the Class were injured because they suffered the public disclosure of personal

14  information without consent, the increased and imminent threat of economic harm through the

15  use of compromised credit card accounts, and were deprived the benefit of the services for which

16  they bargained, all of which has ascertainable value to be proven at trial.

17      129.    In addition, members of the Subclasses have suffered damages due to the Service

18  Outage, which prevented members of the Subclasses from enjoying the benefit of services for

19  which they bargained and for which they paid valuable consideration.

20  <center>**SEVENTH CAUSE OF ACTION**
**Negligence Per Se**
**(On behalf of Plaintiff, the Class and the Subclasses)**</center>

21

22      130.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

23      131.    Defendant's violations of Cal. Bus & Prof. Code §§ 17200, *et. seq.*, Cal. Civ.

24  Code §§ 1750, *et seq.*, and Cal. Civ. Code §§ 1798.80, *et. seq.* resulted in injury to Plaintiff and

25  the Class.

26

27

28

COMPLAINT

22

1    132. The harm Defendant caused to Plaintiff and the Class are injuries that result from
2    the type of occurrences those statutes were designed to prevent.

3    133. Plaintiff and the Class are the type of persons for whose protection those statutes
4    were adopted.

5    134. Defendant's violations of the foregoing statutes as described herein resulted in
6    injury to Plaintiff and the Class. Plaintiff and the Class members did not receive the benefit of
7    the bargain for which they contracted and for which they paid valuable consideration, including
8    consideration in the form of their personal information, which has ascertainable value to be
9    proven at trial.

10                                    **PRAYER FOR RELIEF**

11   WHEREFORE, Plaintiff James Efird, individually and on behalf of the Class, prays for
12   the following relief:

13   A. An order certifying this case as a class action on behalf of the Class and
14   Subclasses defined above, appoint Plaintiff James Efird as Class Representative, and appoint his
15   counsel as Class Counsel;

16   B. Declare that Sony's actions, as described herein, violate the California Unfair
17   Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, the Consumer Legal Remedies Act,
18   Cal. Bus. & Prof. Code § 1750, the Security Requirements for Customer Records, Cal. Bus. &
19   Prof. Code § 1798.80, and constitute breach of contract, or in the alternative, breach of implied
20   contract, as well as negligence and negligence per se;

21   C. Awarding injunctive and other equitable relief as is necessary to protect the
22   interests of the Class, including, *inter alia*: (i) an order prohibiting Sony from engaging in the
23   wrongful and unlawful acts described herein; and (ii) requiring Sony to protect all data collected
24   on the PSN in accordance with industry standards;

25   D. Award damages, including statutory damages where applicable, to Plaintiff and
26   the Class in an amount to be determined at trial;

27

28
COMPLAINT

23

1        E.    Award Plaintiff and the Class their reasonable litigation expenses and attorneys'

2  fees;

3        F.    Award Plaintiff and the Class pre- and post-judgment interest, to the extent

4  allowable; and

5        G.    Award such other and further relief as equity and justice may require.

6  <div align="center">**JURY TRIAL**</div>

7  Plaintiff demands a trial by jury for all issues so triable.

8

9                    Respectfully submitted,

10  Dated: April 28, 2011

11

12                    By:
                       Sean Reis

13                       One of Plaintiff's Attorneys

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

24